IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | | |
|---|---|---|
| SOUTHERN COLLISION & RESTORATION, LLC | * * * | MDL Docket No. 6:14-md-2557-GAP-TBS |
| | * | CASE NO.: 6:14-cv-06005-GAP-TBS |
| VERSUS | * * | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE & CASUALTY COMPANY, and STATE FARM GENERAL INSURANCE COMPANY | * * * * * | Originally filed in the Eastern District of Louisiana |

*************************************************************************

## OBJECTION TO REPORT AND RECOMMENDATION

NOW INTO COURT, through undersigned counsel, comes Plaintiff in the above-captioned matter, which in objection to the Report and Recommendation (MDL Doc. No. 161/Case Doc. No. 30), respectfully responds as follows:

**I.   General**

On March 10, 2015, the Court issued a Report and Recommendation wherein it recommended that the causes of action encompassed within Count I (Louisiana Unfair Trade Practices) and Count IV (Quasi-Estoppel) be dismissed with prejudice and that the remaining causes of action be dismissed without prejudice, with the right of Plaintiffs to file an amended complaint to address the deficiencies noted.

Plaintiff notes the dominant causes of action in this case, those being the Sherman Act claims encompassed within Counts VI and VII, are substantially similar to those previously ruled upon in the A&E Body Shop, Inc., et al v. 21st Century Centennial Ins. Co., et al (No. 6:14-cv-310-Orl-31TBS). Plaintiff further notes that this Honorable Court will likely rule consistently with its ruling in that matter and dismiss these claims without prejudice, preserving the right to Plaintiff to amend its Complaint to comply with the Court's ruling.

Thus, inasmuch as it appears that an amended complaint will be required, in the interests of judicial economy and efficiency, Plaintiff appears herein to object only to the dismissal of their claims encompassed within Count I, namely their claims pursuant to the Louisiana Unfair Trade Practices Act and Consumer Protection Law, LSA-R.S. 51:1401, et seq. (Hereinafter "LUTPA). Plaintiff does not object to the dismissal with prejudice of the claims asserted in Count IV (Quasi-Estoppel); however, Plaintiff does reserve the right to assert quasi-estoppel as a defense as opposed to a cause of action.

**II.     Objection to Recommendation of the dismissal of Plaintiff's LUTPA Claims**

Plaintiff respectfully asserts that the Court erred in recommending the dismissal of its LUTPA claims with prejudice. Specifically, Plaintiff respectfully contends the Court erred in concluding that the actions and transactions complained of within its LUTPA claims are within the jurisdiction of the Louisiana Commissioner of Insurance and thus, excluded from the purview of LUTPA.

However, the Louisiana Commissioner of Insurance does not have regulatory authority over the interactions between body shops and insurers, nor does the Commissioner choose to exercise discretionary intervention in those relations.  Several other Plaintiffs have previously attempted to elicit assistance from the Commissioner but all such requests have been rejected. Upon information and belief, the Louisiana Department of Insurance, through Barbara Payne, LDI Property & Casualty Compliance Division, has specifically and unequivocally notified Plaintiff Miles Paint and Body that the LDI is limited to the laws in the Code and any regulations promulgated thereunder and Miles' complaints did not implicate any of the laws under LDI authority.

In arriving at its recommendation, the Court correctly noted that the LUPTA expressly provides that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. Ann. 51:1405. The Court further correctly noted that exempt from the score of LUPTA are "actions or transactions subject to the jurisdiction of the ... the insurance commissioner...."La. Rec. Stat. Ann. 51:1406.

The introductory statute to the Louisiana Insurance Code provides in pertinent part that:

> Insurance is an industry affected with the public interest and it is the purpose of this Code to regulate **that industry** in all its phases.   Pursuant to the authority contained in the Constitution of Louisiana, the office of the commissioner of insurance is created. It shall be the duty of the commissioner of insurance **to administer the provisions of the Code.**   La. Rev. Stat. Ann. 22:2. (Emphasis added).

The Court noted this provision, but gave undue weight and an expansive interpretation of the statute. Although the statute does provide that "the purpose of this Code is to regulate that industry in all its phases," this statement expresses the intent of the Louisiana Legislature to vest in the Commissioner of Insurance the authority to regulate the insurance"industry" in all its phases, not the authority of the Commissioner of Insurance to regulate every action or transaction of an insurance company. A review of the Insurance Code reveals the "phases" contemplated, namely:

Chapter 1:     General Provisions

Chapter 2:     Requirement for Insurers and Other Risk Bearing Entities

Chapter 3:     Deposits, Assessments, Fees and Taxes

Chapter 4:     Insurance and Insurance Contract Requirements by Types of Insurance

Chapter 5:     Producers and Other Regulated Entities

Chapter 6:     Payment of Claims

Chapter 7:     Fraud and Unfair Trade Practices

Chapter 8:       Examination and Investigations

Chapter 9:       Rehabilitation, Liquidation, Conservation

Chapter 10:      Guaranty Funds

Chapter 11:      Commissions and Associations

Chapter 12:      Administrative Orders, Hearings and Appeals

Chapter 13:      Pilot Programs and Databases

Chapter 14:      REPEALED

Chapter 15:      Louisiana Citizens Property Insurance Corporation

Chapter 16:      Inure Louisiana Incentive Program

Chapter 17:      Interstate Insurance Product Regulation Compact

Chapter 18:      Internal Claims and Appeals Process and External Review

Clearly, the Insurance Code is directed at governing the insurance "industry" within the State of Louisiana, not all conduct of insurance companies within the state. Only that conduct of an insurer that is related to the business of insurance is within the jurisdiction of the Commissioner of Insurance.

The Court did correctly note the provisions contained within Chapter 7 address Fraud and Unfair Trade Practices; however, the Court incorrectly gave an expansive interpretation to this section. The Court stated that, "The Insurance Code separately bans 'any trade practice which is defined in [the Insurance Code] to be an unfair method of competition or an unfair or deceptive act or practice .....'" See Report and Recommendation at p. 8 (Quoting La. Rev. Stat. Ann. 22:1963). However, the Court omitted what Plaintiff believes is a critical section of the statute which narrows

its application to what is within the jurisdiction of the Commissioner of Insurance. The entirety of the statute, including the language omitted by the Court in its analysis provides:

> No person shall engage in this state in any trade practice which is defined in this Part to be an unfair method of competition or an unfair or deceptive act or practice **in the conduct of the business of insurance,** including unauthorized insurance as provided in R.S. 22:1902 et seq. La. Rev. Stat. Ann. 22:1963. (Emphasis added).

The highlighted language clearly restricts the jurisdiction of the Commissioner of Insurance in regulating unfair methods and unfair or deceptive acts and practices of insurance companies to those deceptive acts or practices carried out "in the conduct of the **business of insurance**." The Court seemingly agreed with Plaintiff's position when it stated that, "It is apparent from Louisiana's statutory scheme that LUPTA's insurance exclusion is designed to carve out the business of insurance which is governed separately by its own title of the Louisiana Code." See Report and Recommendation at p. 8.

In the present case, Plaintiff does not complain about the "business of insurance." Plaintiff is not complaining about improper insurance practices, the improper calculation of premiums, the financial requirements of any insurer, or any other aspect of the "business of insurance." Rather Plaintiff, who is a vendor to individuals in need of auto repair services, complains about the conduct of insurers who Plaintiff contends engaged in concerted activity to, among other things, illegally steer customers away from it when they resisted the insurers' illegal activities. Although auto body repair shops may very well be a necessary vendor collateral to the insurance industry, the relationship between the auto body repair shops and the insurers is not the "business of insurance."

Indeed, Plaintiff is no more involved in the "business of insurance" than the property owners who lease office space to insurers or the office supply companies who lease or sell copiers to the insurance industry. One could hardly argue that if property owners or office supply companies filed

suit alleging that insurers illegally engaged in concerted activity to fix the prices they could charge that such would be within the jurisdiction of the Commissioner of Insurance simply because the parties engaged in the illegal activity were insurance companies.

More to the point is the Court's incorrect reliance on La. Rev. Stat. Ann. 22:1964, which the Court noted lists twenty-eight practices which "are declared to be unfair methods of competition and unfair or deceptive acts or practices in the **"business of insurance.**" La. Rev. Stat. Ann. 22: 1964. (Emphasis added). Relying upon Sections (14)(f) and (h) of this statute, the Court erroneously concluded that, "If an insurer adopted a practice of regularly refusing to pay the amount reasonably necessary to repair a damaged vehicle, it would violate the 'unfair claim settlement practices' provision of Louisiana's Insurance Code." See Report and Recommendation at p. 9.

The Court was correct that Section (14) which is entitled "Unfair claims settlement practices" would proscribe certain conduct by insurance companies, but it was incorrect when it concluded the referenced subsections, (f) and (h), apply to the relationship between an insurance company and a third-party vendor, such as an auto body repair shop. The subsections relied upon by the Court provide that the following constitute unfair claims settlement practices by insurers:

> (F) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
>
> * * *
>
> (H) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

–6–

Review of these subsections relied upon by the Court confirm that they address the insurer's obligation when settling claims, i.e., the business of insurance. The "claims" referred to in these subsections are insurance claims, made by insureds or those to whom the insureds are liable. Confirmation of Plaintiffs' position in this regard can be obtained by reference to the specific Insurance Code section governing the payment of property and casualty claims, which would be the applicable section for automobile liability claims. These provisions are embodied in La. Rev. Stat. Ann. 22:1891 through 1896 and the pertinent sections are summarized as follows:

| | |
|---|---|
| 1891A(1) | Provides that insurers "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. |
| 1891A(2) | Provides that insurers "shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant." |
| 1891A(4) | Provides that "[a]ll insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim." |
| 1891B(4) | Provides that "[w]henever a property damage claim is on a personal vehicle owned by the third party claimant and as a direct consequence of the inactions of the insurers and the third party claimant's loss the third party claimant is deprived of use of the personal vehicle for more than five working days, excluding Saturdays, Sundays, and holidays, the insurer responsible for payment of the claim shall pay, to the extent legally responsibly, for the reasonable expenses incurred by the third party claimant in obtaining alternative transportation for the entire period of time during which the third party claimant is without the use of his personal vehicle. Failure to make such payment within thirty days after receipt of adequate written proof and demand therefore, when such failure is found to be arbitrary, capricious or without probable cause shall subject the insurer to, in addition to the amount of |

such reasonable expenses incurred, a reasonable penalty not to exceed ten percent of such reasonable expenses or one thousand dollars whichever is greater together with reasonable attorneys fees for the collection of such expenses."

1891C(1)   Provides that, "[a]ll claims brought by insureds, worker's compensations claimants, or third parties against an insurer shall be paid by check or draft of the insurer to the order of the claimant to whom payment of the claim is due pursuant to the policy provisions, or his attorney, or upon direction of such claimant to one specified..."

1892.1   Provides that, "[n]o automobile insurer shall use arbitration or any other type of binding meditation to determine fault for purposes of settling a claim resulting from an automobile accident for the purpose of raising insurance premiums of an insured without notifying the insured as to the percentage of fault prior to arbitrations."

La. Rev. Stat. Ann. 22:1973 governs the insurer's duty of good faith when settling claims.

This statute provides in pertinent part:

1973A:   Provides that an insurer "owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."

1973B(5):   Provides that, "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause."

1973C:   Provides that, "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

Clearly, in light of the entire statutory scheme, the auto body repair shop is not a "claimant" and did not make "claims" with the insurance company. Rather, the auto body repair shop is a third-party vendor who seeks to charge a fair market rate for the goods and services it provides. It alleges in this suit that the insurers acted illegally to fix the rates they could charge, the services they could provide, the price they could pay for parts, the quality of parts they could utilize and the scope of repairs they could perform, all as set forth more fully in the Complaint.

The Commissioner of Insurance has no more authority to investigate and regulate the actions complained of by Plaintiff than he does to regulate what insurance companies pay property owners for rent or the price they pay office supply companies for the lease or purchase of copiers.

All cases relied upon by the Court dealt with the "business of insurance" and are governed by express provisions contained within the Louisiana Insurance Code. In contrast, the causes of action asserted by Plaintiff in the instant case do not deal with the "business of insurance" and there are no Louisiana Insurance Code provisions governing the conduct of insurance companies when they act as mere consumers of goods and services.

Additionally, the interpretation urged in the Report and Recommendation conflicts with applicable Supreme Court authority on what constitutes the "business of insurance."

The Supreme Court, in interpreting the "business of insurance" exception of the McCarren-Ferguson Act, specifically found that for purposes of the "business of insurance," underwriting and the spreading of risk were indispensable characteristics of actions constituting the "business of insurance." In the absence of these characteristics, the activities do not constitute the "business of insurance*."* *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 212 (U.S. 1979).

Further, the Court held that payment arrangements between pharmacies and insurance companies are specifically <u>not</u> the business of insurance but merely the "business of insurance companies." "The fallacy of the petitioners' position is that they confuse the obligations of Blue Shield under its insurance policies, which insure against the risk that policyholders will be unable to pay for prescription drugs during the period of coverage, and the agreements between Blue Shield and the participating pharmacies, which serve only to minimize the costs Blue Shield incurs in fulfilling its underwriting obligation." *Id.* at 213.

"If agreements between an insurer and retail pharmacists are the "business of insurance" because they reduce the insurer's costs, then so are all other agreements insurers may make to keep their costs under control -- **whether with automobile body repair shops** or landlords. Such agreements would be exempt from the antitrust laws if Congress had extended the coverage of the McCarran-Ferguson Act to the "business of insurance companies." But that is precisely what Congress did not do.

"Application of this principle is particularly appropriate in this case because the Pharmacy Agreements involve parties wholly outside the insurance industry." *Id.* at 231.

The Supreme Court has clearly put the business actions between insurance companies and other industries outside the business of insurance. The Court specifically recognized automobile body repair shops, such as the Plaintiff, as dealings outside the business of insurance.

### III.   Objection to findings regarding unjust enrichment

In dismissing, without prejudice, Plaintiff's claims of unjust enrichment, the Court relies solely on an "inference to be drawn from these allegations" within Plaintiff's original Complaint. See Report and Recommendation at p. 12. In reaching its decision, the Court correctly points out

that "the Southern Collision Complaint does not contain an express allegation that a contract existed between Plaintiff and Defendants…" *Id.* Rather, Plaintiff specifically states in his Complaint that the defendants exert control over the Plaintiff by way of entering into program agreements with *the individual auto repair shops.*" *Id.* However, the Court relies on other paragraphs of Plaintiff's Complaint to draw the inference that Plaintiff has a DRP agreement with Defendants. Specifically, the Court sites paragraph 46 of Plaintiff's Complaint which states as follows:

> Defendant State Farm also imposes restrictions on the Plaintiff's ability to obtain and utilize quality replacement parts and materials. As part of its DRP agreement, State Farm asserts it has the unilateral authority to enter into separate agreements with manufacturers, distributors or suppliers of automotive parts, supplies or materials (Southern Collision Complaint, 46).

The Court then unilaterally determined that the only plausible inference to be drawn from that allegation is that Plaintiff has a DRP agreement with Defendants. However, this allegation could just as plausibly have intended to convey the idea that State Farm imposes restrictions on this Plaintiff's ability to obtain and utilize quality replacement parts and materials because of its DRP agreement with other body shops, who are in direct competition with Plaintiff, and who are using these lesser quality replacement parts and materials, because State Farm's DRP agreement with those other body shops compel them to do so; thereby, pressuring Plaintiff to act similarly in an effort to stay competitive with DRP shops.

In short, to the extent that the Court recommends dismissal, although without prejudice, despite the clear language of paragraph 10 of its Complaint and based on an inference drawn from paragraph 46 of its Complaint, such dismissal is inappropriate.

Furthermore, to the extent that Defendants have asserted the existence of a contract, Plaintiff denies such and argues that such assertion by the Defendants can only be characterized as an

affirmative defense. Under Rule 8c of the Federal Rules of Civil Procedure, any avoidance or affirmative defense must be set forth in the Answer. The Defendant bears the burden of proof for affirmative defenses. *SE Prop. Holdings, LLC v. McElheney*, 2015 U.S. Dist. LEXIS 14632, *7 (N.D. Fla. Feb. 6, 2015), *Gambon v. R & F Enters.*, 2014 U.S. Dist. LEXIS 179125, *11 (M.D. Fla. Dec. 2, 2014).

The Defendants' mere assertion of the existence of a contract does not establish its existence, thus the unquestionable allocation of proof upon the defendant for such claims. Under Louisiana law, the existence of an enforceable contract is a question of fact. *Landers v. Integrated Health Servs.*, 903 So. 2d 609, 612 (La.App. 2 Cir. May 11, 2005). Therefore, the Court may not assume the existence of a contract, but the question must be determined by the finder of fact, in this case, a jury. This is consistent with allocation of the burden of proof to the Defendants as an affirmative defense.

With respect to the contents of the Complaint, Plaintiff respectfully disagrees with the interpretation applied. Explicitly, nowhere in the Complaint does the Plaintiff allege it has or ever had a valid contract with any Defendant, nor should such be inferred from the language of Plaintiff's complaint.

In sum, the Defendants have asked this Court to allow them to ignore their affirmative obligations, excuse them from their burden of proof and make assumptions they should not be asking the Court to make.

As the Plaintiff did not assert the existence of a contract, nor is it required to negate the existence of the same in the Complaint, and the Defendants bear the burden of pleading and proving the same, Plaintiff respectfully submits its request that this recommendation be reconsidered.

IV.     **Objection to findings regarding tortious interference with business relations**

The issued Report and Recommendation submits the Plaintiff must identify specifically which interests were interfered with by Defendants. Respectfully, this is not the pleading standard for Rule 8 of the Federal Rules of Civil Procedure.

Tortious interference claims are subject to Rule 8, requiring only a short and plain statement of the facts.  In discussing Rule 8, the Supreme Court has stated most clearly, ""we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007).

The Report and Recommendation specifically contravenes express, unambiguous direction by the Supreme Court by requiring specific identification of each tortious interference by each Defendant against each Plaintiff.

Furthermore, the requirement seeks to compel Plaintiff to produce information which is peculiarly within the possession and control of the Defendants.  See, e.g., *Gaylor v. Ga. Dep't of Natural Res.*, 2012 U.S. Dist. LEXIS 115019 (N.D. Ga. Aug. 15, 2012).

Even were this actually a Rule 9(b) case, this level of specificity would not be required under the circumstances.  Even asserting fraud, which is unarguably subject to the pleading requirements of Rule 9, Courts have relaxed the specificity requirement where, as here, the full facts are within the possession and control of the Defendants.  See, e.g., *Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. Pa. 1989).  Courts reached this conclusion because they "must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud."  *Id.* (Internal punctuation omitted*).*

The present Recommendation imposes a higher pleading standard than any Rule of Procedure applicable and higher than the explicit direction and holdings of the Supreme Court.

## V.     Conclusion

For the foregoing reasons, Plaintiff prays that the Report and Recommendation be denied insofar as it recommends the dismissal of Plaintiffs causes of action contained within Count I (Louisiana Unfair Trade Practices Act). Plaintiff does not object to the dismissal with prejudice of its causes of action contained within Count IV (Quasi-estoppel); however, they reserve the right to assert this legal theory as a defense.

With respect to the dismissal of the remaining counts without prejudice, Plaintiff objects and prays that the Motion to Stay Deadlines for Amended Complaints (Doc. No. 166) recently filed in MDL No. 6:14-md-2557 be granted and the deadline to file an Amended Complaint be stayed pending further orders as prayed for in said motion. Alternatively, Plaintiff prays that they be given 90 days to file an Amended Complaint.

Plaintiff further prays for all other relief to which they are entitled whether in law or in equity.

                                Respectfully submitted,

                                **HUBER, SLACK, THOMAS & MARCELLE, LLP**

                                */s/Brian P. Marcelle*
                                STEPHEN M. HUBER, BAR NO. 24463
                                CHARLES M. THOMAS, BAR NO. 31989
                                BRIAN P. MARCELLE, BAR NO. 25156
                                1100 Poydras Street, Suite 1405
                                New Orleans, LA 70163
                                Telephone:(504) 274-2500
                                Facsimile: (504) 910-0838
                                ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/Brian P. Marcelle
BRIAN P. MARCELLE