UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PARKER AUTO BODY INC., et al.,

       Plaintiffs,

v.                                                                      Case No:  6:14-cv-6004-Orl-31TBS
                                                                        MDL Case No:  6:14-md-2557-GAP-TBS
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

       Defendants.
_____

SOUTHERN COLLISION &
RESTORATION, LLC,

       Plaintiff,

v.                                                                      Case No:  6:14-cv-6005-Orl-31TBS
                                                                        MDL Case No:  6:14-md-2557-GAP-TBS
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

       Defendants.
_____

## REPORT AND RECOMMENDATION

These cases come before me on referral from the district judge for report and

recommendations on the questions of Louisiana state law raised in the motions to dismiss

currently pending in Parker Auto Body Inc. v. State Farm Mutual Automobile Ins. Co.,

Case No. 6:14-cv-6004 (the "Parker Case"), and Southern Collision & Restoration, LLC v.

State Farm Mutual Automobile Ins. Co., Case No. 6:14-cv-6005 (the "Southern Case").

This report and recommendation addresses the following motions and responses in the

Parker Case:

- Defendant Fireman's Fund Insurance Company's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 120);

- Moving Defendants' Motion to Dismiss First Amended Complaint (Doc. 121);

- Notice of Joinder in Moving Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 122);

- GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company and Government Employees Insurance Company's Motion and Supporting Memorandum to Dismiss Plaintiffs' First Amended Complaint (Doc. 123);

- Certain Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 125);

- Defendant America First Insurance Company's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 131);

- Plaintiffs' Response to Defendant Fireman's Fund Insurance Company's Motion to Dismiss (Doc. 133);

- Plaintiffs' Response to Certain Defendants' Motion to Dismiss (Doc. 134);

- Defendant Fireman's Fund Insurance Company's Reply to Plaintiffs' Response to Fireman's Fund Insurance Company's Motion to Dismiss First Amended Complaint (Doc. 137);

- Moving Defendants' Reply Brief in Further Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 138);

- Notice of Joinder in Moving Defendants' Reply Brief in Further Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Docket #138) (Doc. 139);

- GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company and Government Employees Insurance Company's Reply in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 145);

- Certain Defendants' Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 146);

- Plaintiffs' Response to GEICO Defendants' Motion to Dismiss (Doc. 153);

- GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company and Government Employees Insurance Company's Reply in

Support of their Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 154); and

- State Farm's Notice of Supplemental Authority (Doc. 162).

This report and recommendation also addresses the following motions and responses in the Southern Case:

- GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company and Government Employees Insurance Company's Motion and Supporting Memorandum to Dismiss Plaintiffs' First Amended Complaint (Doc. 37);

- Moving Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 41);

- Defendant Fireman's Fund Insurance Company's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 42);

- Certain Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 45);

- Plaintiff's Memorandum in Opposition to Defendant GEICO's Rule 12(b)(6) Motion to Dismiss (Doc. 58);

- Plaintiff's Memorandum in Opposition to Certain Defendants' Motion to Dismiss (Doc. 59);

- GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company and Government Employees Insurance Company's Reply Supporting its Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 61);

- Defendant Fireman's Fund Insurance Company's Reply to Plaintiffs' Memorandum in Opposition to Certain Defendants' Motions to Dismiss First Amended Complaint (Doc. 62); and

- Certain Defendants' Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 63).

After due consideration I respectfully recommend that with four exceptions, the motions be granted to the extent that the state law claims in both cases be dismissed with prejudice.  I respectfully recommend dismissal of the four excepted claims without

prejudice, with leave to amend, and that the Court decline to exercise supplemental jurisdiction over those claims.

## I. Background

The Court is familiar with the background of these cases.  In the Parker Case, 39 automobile body repair shops filed suit against 57 insurance companies that write automobile insurance in the state of Louisiana.[1]  The Southern Case began as an action by one auto body repair shop against three State Farm insurance companies that write automobile insurance in Louisiana.[2]  Both complaints asserted claims for violation of § 1 of the Sherman Act, 15 U.S.C. § 1, violation of the Louisiana Unfair Trade Practices Act ("LUPTA"), unjust enrichment, quasi-estoppel, tortious interference with business relations, and conversion.[3]  On April 27, 2015, the Court dismissed the LUPTA and quasi-estoppel claims with prejudice, and the remaining claims without prejudice, with leave to amend.[4]

Plaintiffs, Guillory Collision Center, Inc., Ginn's Automotive Frame Shop, LLC, and Mitchell Body & Frame Shop, Inc., have voluntarily withdrawn from the Parker Case, and four new Plaintiffs, NAPA Collision Center of Bastrop, LLC, Joseph S. Kelley d/b/a Kelley Kustoms, Body by Cook, Inc., and Keith Mazarac d/b/a Precision Body and Frame have joined the action.[5]  The first amended complaint includes counts for violation of § 1 of the Sherman Act, tortious interference with business relations, and unjust enrichment.[6]

The Plaintiff in the Southern Case also filed a first amended complaint, incorporating substantially all of the allegations in the first amended complaint in the

---

[1] Parker Case, Docket Entry 1.
[2] Southern Case, Docket Entry 1.
[3] Parker Case, Docket Entry 1; Southern Case, Docket Entry 1.
[4] Parker Case, Docket Entry 118; Southern Case Docket Entry 34.
[5] Parker Case, Docket Entry 119 at 1.
[6] Id.

Parker Case, including adding all of the Defendants in the Parker Case.[7]  The claims and motions to dismiss in the two cases are sufficiently alike that they can be analyzed together.

Plaintiffs allege that they provide motor vehicle collision repair services to Defendants' policyholders and claimants,[8] and that

>Defendants have intentionally combined to utilize their aggregated market power to exert control over every aspect of the collision repair industry, including but not limited to price fixing of labor rates, price fixing of replacement parts, compulsory use of substandard or dangerous replacement parts, compulsory use of a parts procurement program which directly financially benefits State Farm Defendants and indirectly benefits the remaining Defendants, boycotting shops which refuse to comply with either fixed prices or use of substandard or improper parts, and interfering with Plaintiffs' current and prospective business relations by intentionally misrepresenting and making knowingly false statements regarding the quality, efficiency and ethical reputation of Plaintiffs' businesses, exerted economic duress and coercion upon both the Plaintiffs to capitulate and upon consumers, including direct threats to consumers to refuse coverage or portions of available coverage if consumers persist in their efforts to patronize Plaintiffs' businesses.[9]

Defendants' actions are said to "have caused a complete eradication of competition within the body shop industry."[10]  On March 24, 2016, the Court entered Orders dismissing Plaintiffs' antitrust claims with prejudice,[11] leaving only the motions directed to the state law claims to be decided.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the

---

[7] Id., Docket Entry 36.
[8] Parker Case, Docket Entry 119, ¶ 107; Southern Case, Docket Entry 36, ¶ 116.
[9] Parker Case, Docket Entry 119, ¶ 110; Southern Case, Docket Entry 36, ¶ 119.
[10] Parker Case, Docket Entry 119, ¶ 111; Southern Case, Docket Entry 36, ¶ 120.
[11] Parker Case, Docket Entry 165; Southern Case, Docket Entry 71.

claim showing that the pleader is entitled to relief."[12]  A Rule 12(b)(6) motion to dismiss for

failure to state a claim merely tests the sufficiency of the complaint; it does not decide the

merits of the case.[13]  In determining whether dismissal on this basis is appropriate, the

complaint must be construed in the light most favorable to the plaintiff, and all well-

pleaded facts must be accepted as true.[14]  The Supreme Court has explained that "once

a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint."[15]  The court should liberally construe the

complaint's allegations in the plaintiff's favor.[16]  But, a claim for relief "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do."[17]  "Factual allegations must be enough to raise a right to relief above the

speculative level[.]"[18]  A complaint must be dismissed if it does not plead "enough facts to

state a claim to relief that is plausible on its face."[19]  Legal conclusions devoid of factual

support are not entitled to an assumption of truth.[20]

### III. Discussion

<u>Shotgun and Group Pleading</u>

Defendants urge dismissal of the state law claims on the grounds that they are

impermissible shotgun and group pleadings.  The tortious interference count in the Parker

Case begins at paragraph 543 and the unjust enrichment count begins at paragraph

---

[12] <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), overruled on other grounds, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).
[13] <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984).
[14] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Ironworkers Local Union 68 v. AstraZeneca Pharm., LP</u>, 634 F.3d 1352, 1359 (11th Cir. 2011).
[15] <u>Twombly</u>, 550 U.S. at 546.
[16] <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).
[17] <u>Id.</u> at 555.
[18] <u>Id.</u>
[19] <u>Id.</u> at 570.
[20] <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing <u>Iqbal</u>, 556 U.S. at 678); <u>Davila v. Delta Air Lines, Inc.</u>, 326 F.3d 1183, 1185 (11th Cir. 2003).

555.[21]  In the Southern Case, the tortious interference count begins at paragraph 455 and

the unjust enrichment count begins at paragraph 468.[22]  Plaintiffs fail to state which of the

preceding paragraphs of their complaints are incorporated into these counts.  The Court

addressed this concern in a related case:

> At the outset, it should be noted that the Plaintiffs have failed
> to indicate which assertions in the Second Amended
> Complaint are intended to support which of their claims.
> None of the four counts explicitly incorporate any of the factual
> assertions set forth in the pleading.  Instead, the Plaintiffs' 70
> pages of "Facts" are simply followed by 17 pages of "Causes
> of Action," leaving it up to the reader to divine which
> allegations the Plaintiffs believe to be relevant to any
> particular claim.  Normally, the Court would remedy this
> shortcoming by requiring the Plaintiffs to replead.  But given
> the enormous amount of time it has already taken to get to this
> point in the proceedings, the Court will instead rely on the
> Plaintiffs' papers and its own assessment of the document to
> resolve the instant motions.[23]

Despite the Court's comments, Plaintiffs have continued their practice of not

explicitly incorporating paragraphs into the counts of their complaints.  Based upon the

averments in the first amended complaints and Plaintiffs' memoranda, I conclude that

they intend all of the preceding paragraphs to be included in each count.  This means the

tortious interference counts include the antitrust counts, and the unjust enrichment counts

include the antitrust and tortious interference counts.  The incorporation of each

preceding count into each succeeding count is a form of "shotgun pleading" and is

prohibited.[24]  The Eleventh Circuit has condemned shotgun pleading, observing that "'the

unifying characteristic of all types of shotgun pleadings is that they fail to … give the

---

[21] Parker Case, Docket Entry 119.
[22] Southern Case, Docket Entry 36.
[23] A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-310-Orl-31TBS, Docket Entry 341 at page 4 (footnote omitted).
[24] Yeyille v. Miami Dade Cty. Pub. Sch., ___ F. App'x ___, No. 15-13053, 2016 WL 692050, at *1 (11th Cir. Feb. 22, 2016).

defendants adequate notice of the claims against them and the grounds upon which each

claim rests.'"[25]  By commingling all of their factual allegations, regardless of the counts

they pertain to, Plaintiffs have improperly placed the burden on Defendants and the Court

to determine which allegations pertain to which counts of the first amended complaints.

     The first amended complaints are also group pleadings.   With a handful of

exceptions, Plaintiffs lump themselves together in one group and Defendants in another

group so as to allege that every Defendant committed every violation of law against every

Plaintiff.[26]  I discussed group pleading in a related case:

> Plaintiffs' use of group pleading has been an issue since the
> start of this litigation.  On June 11, 2014, the Court *sua sponte*
> dismissed the original complaint in the Florida case, in part
> because of the use of group pleading (Case No. 6:14-cv-310,
> Doc. 110).   The Court explained:
>
>> With limited exceptions, the allegations of wrongdoing
>> are  attributed, collectively, to every Defendant and
>> alleged to have  been perpetrated upon every Plaintiff.
>> While there may be situations in which such collective
>> descriptions are sufficient,   at least some of claims
>> asserted here require individualized  allegations.
>
> (Id. at 2).   The Florida Plaintiffs amended their complaint by
> adding the following sentence to each paragraph that referred
> generally to "Defendants." … In its January 21, 2015 Order
> dismissing the Florida amended complaint the Court
> condemned this practice:
>
>> Not surprisingly, the term "the Defendants" appears
>> throughout the Amended Complaint.   As a result of
>> the unwarranted inclusion of these names wherever
>> that phrase  appears, the Amended Complaint is more
>> than twice as long as the (already lengthy) Complaint,
>> and much more difficult to  read.   This is

---

[25] Id. (quoting Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)).
[26] The first amended complaints allege conduct by "Defendants," meaning all 57 insurance companies, against "Plaintiffs" who, in the Parker Case are 39 auto body shops.  The amended complaint in the Parker Case sets forth approximately 16 instances where a particular Defendant attempted to steer, or steered an identified customer away from a particular Plaintiff (Parker Case, Docket Entry 119, ¶¶ 350-74). The Southern Case alleges one instance where an identified Defendant steered one of Plaintiff's customers (Southern Case, Docket Entry 36, ¶ 312.

> unacceptable, and will result in sanctions if not cured
> in subsequent pleadings.   A requirement to provide
> "individualized allegations" cannot reasonably be read
> as a requirement to repeat the name of every
> individual Defendant, over and over.
>
> Counsel for the Plaintiffs argue that, wherever they use
> the term "the Defendants," they always intend to refer
> to every single Defendant.    But this does not appear
> to always be the case.   For example, in the
> paragraphs quoted above, the Plaintiffs allege that
> "the Defendants" enter DRP agreements with the
> individual Plaintiffs.   But according to the list that the
> Plaintiffs attached to the Amended Complaint, only a
> handful of the Defendants have entered into DRPs
> with any Plaintiff. (Doc. 167-4).   And some
> Defendants have informed the Court that they have
> never participated in a DRP with any repair shop.  The
> Plaintiffs should insure that their references to "the
> Defendants" are, in fact, intended to encompass every
> single Defendant.

Id. at *3-4.   In a footnote, the Court observed:

> Plaintiffs have not addressed the Court's concerns
> over their attempt to proceed collectively on state law
> claims, such as conversion and unjust enrichment,
> which would seem to require individualized
> allegations.   As those claims are being dismissed on
> other grounds, and in the absence of detailed briefing
> on the issue, the Court will not spend more time on the
> issue.  However, the issue has not been settled, and
> any party may raise it in connection with future
> pleadings.[27]

In a different Order the Court said:

> As for the tortious interference claim, Magistrate Judge
> Smith concluded that the allegations were implausible, in
> that the Plaintiffs were alleging that all of the Defendants
> were interfering with the business of all of the Plaintiffs,
> including those with whom the Defendants had DRPs.
> Magistrate Judge Smith concluded that the generalized,
> shotgun nature of the Plaintiffs' contentions does not satisfy
> the applicable pleading standard and recommended that, in
> any amended complaint, the Plaintiffs be required to specify

---

[27] In re: Auto Body Shop Antitrust Litigation, 6:14-md-2557-Orl-31TBS, Docket Entry 192 at 5-11.

which Defendants interfered with which Plaintiffs.  The
Plaintiffs contend that this is an impractical pleading
standard because it seeks to compel them to produce
information "which is peculiarly within the possession and
control of the Defendants."  But there is nothing in the
Complaint that explains why the Defendants, but not the
Plaintiffs, would have this information.  Surely the Plaintiffs
must have some basis to believe that certain Defendants
interfered with certain of the Plaintiffs' customers.  A general
allegation that some unidentified Defendants–or all
Defendants–interfered with some unidentified customers of
some unnamed Plaintiff does not satisfy the requirements of
Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173
L.Ed.2d 868 (2009).[28]

"Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give

each defendant fair notice of the claims against it."[29]  Still, there are cases in which group

pleading is acceptable.  For example, the Eleventh Circuit arguably endorsed the use of

group pleading in Crowe v. Coleman,113 F.3d 1536, 1539 (11th Cir. 1997).  There, the

plaintiffs' former neighbor ran a gas station that was eventually shut down and sold.[30]

Plaintiffs sued both the current and former owners of the gas station for nuisance alleging

that "[t]he defendants have allowed the escape of gasoline from their property onto the

---

[28] Brewer Body Shop, LLC v. State Farm Mut. Auto. Ins. Co., 101 F. Supp. 3d 1256, 1259-60 (M.D.
Fla. 2015).  See also Alpine Straightening Sys. v. State Farm Mut. Auto. Ins. Co., No. 6:14-cv-6003, 2015
WL 1911635, at *1 (M.D. Fla. Apr. 27, 2015); Parker Case, Docket Entry 118 at 3; S. Collision & Restoration,
LLC v. State Farm Mut. Auto. Ins. Co., No. 6:14-cv-6005, 2015 WL 1911768, at *1 (M.D. Fla. Apr. 27, 2015).

[29] Holmes v. Allstate Corp., No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012),
report & recommendation adopted, 2012 WL 626262 (Feb. 27, 2012).  See also DeSoto v. Bd. of Parks &
Recreation, 64 F. Supp. 3d 1070, 1087 (M.D. Tenn. Nov. 25, 2014) (dismissing § 1983 claim in part based
on group pleading, because "under § 1983, a plaintiff must show that each defendant was personally
involved in the alleged constitutional  deprivation"); Targum v. Citrin Cooperman & Co., LLP, No. 12 Civ.
69009(SAS), 2013 WL 6087400, at *6 (S.D.N.Y. Nov. 19, 2013) (concluding that group pleading in the
complaint "fail[ed] to put [one of the defendants] on notice of the specific allegations against it"); Eunice v.
United States, No. 12cv1635-GPC(BGS), 2013 WL 756168, at *3 (S.D. Cal. Feb. 26, 2013) ("Lumping all
'defendants' together and facts regarding the incident does not put a particular defendant on notice as to
the grounds for the allegations."); Tatone v. SunTrust Mortg., Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012)
("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom,
fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made
against a particular defendant."); Lane v. Capital Acquisitions & Mgmt. Co., No. 04-60602 CIV, 2006 WL
4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing
no factual basis to distinguish their conduct, [Plaintiffs'] Complaint fails to satisfy the minimum standard of
Rule 8.").

[30] Crowe, 113 F.3d at 1537-38.

property of the plaintiffs."[31]   The Eleventh Circuit said "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."[32]

Plaintiffs insist there is nothing improper about the manner in which they have pled these cases because they contend that all Defendants have engaged in the same form of illegal activities.  Plaintiffs say that if Defendants want more detail, they can get it in discovery.  Plaintiffs also argue that it is appropriate and efficient to refer to a group of defendants collectively as "defendants," so long as the complaint gives each defendant notice of the claims against it.[33]  The problem with Plaintiffs' argument is that with four exceptions, the first amended complaints fail to inform Defendants or the Court of the specific claims against Defendants.

Plaintiffs continue to assert that it would be impractical for them to provide the level of detail Defendants demand.  They suggest that the inclusion by name of each Defendant where appropriate would increase the length of their complaints to over 2,000 paragraphs and 285 pages.[34]  Plaintiffs also admit that it is impossible for them to plead their cases with greater specificity.  While they know they have done business with all of the Defendants, they require discovery to identify all instances of Defendants' alleged wrongdoing.  This begs the Court's point that "[s]urely the Plaintiffs must have some basis to believe that certain Defendants interfered with certain of the Plaintiffs' customers."[35]

---

[31] Id. at 1539.
[32] Id.
[33] Sprint Sols., Inc. v. Fils-Amie, 44 F. Supp. 3d  1224, 1227 (S.D. Fla. 2014).
[34] Parker Case, Docket Entry 133 at 8.
[35] Brewer Body Shop, LLC, 101 F. Supp. 3d at 1259-60; Alpine Straightening Sys., 2015 WL 1911635, at *1; Parker Case, Docket Entry 118 at 3; S. Collision & Restoration, LLC, 2015 WL 1911768, at *1.

The only specific allegations concerning most Defendants are that they are insurers who do business in Louisiana.  Plaintiffs rely on group pleading to allege that Defendants conspired against them to commit all of the wrongs about which they complain.  The Court rejected Plaintiffs' claim that they had sufficiently alleged a collusive agreement between Defendants when it dismissed the antitrust claims with prejudice.[36] In the absence of an adequately pled conspiracy, Plaintiffs fail to allege how the conduct of one Defendant in steering a customer away from one Plaintiff is related to the conduct of a different Defendant in steering a different customer away from the same or a different Plaintiff.  It is also apparent from the specific allegations of successful and unsuccessful steering that there are material variations in the facts pertaining to each customer Plaintiffs believe was steered by a Defendant.  Consequently, the lumping together of separate and unrelated conduct does not put Defendants on notice of the grounds for the claims against them.

This is not to say I believe Plaintiffs must name, for every body shop and insurer, a customer who was steered by that particular insurer away from that particular body shop.  As the Supreme Court emphasized in Iqbal, a district court's task in determining whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the ... court to draw on its judicial experience and common sense."[37]  But at a minimum, Plaintiffs should allege sufficient facts specific to each Defendant, or at least each corporate family of Defendants, to tie that Defendant to the wrongdoing alleged.   Without these averments, it is not plausible to believe every Defendant made the same statements to every prospective customer, or that every

---

[36] Parker Case, Docket Entry 165; Southern Case, Docket Entry 71.
[37] Iqbal, 556 U.S. at 679.

customer who elected to use one of Defendants' preferred shops was unlawfully steered by a Defendant.  Accordingly, I respectfully recommend that all of the tortious interference and unjust enrichment claims be dismissed as improper shotgun and group pleadings.

### Count III: Tortious Interference with Business Relations

Louisiana recognizes a cause of action for tortious interference with business relations.[38]  "In Louisana, the delict is based on the principle that the right to influence others not to deal is not absolute."[39]  "Louisiana law protects the businessman from 'malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor."[40]  However, tortious interference claims are viewed "with disfavor," and Louisiana courts have limited recovery by requiring plaintiffs to prove actual malice.[41]  To prevail, a plaintiff must prove "'by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.'"[42]  General allegations that a plaintiff lost customers or that a defendant's actions affected the plaintiff's business interests will not suffice.[43]  The plaintiff "must show that the [defendant] actually prevented him from having dealings with an identifiable third party."[44]  "[I]t is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party."[45]  Louisiana courts have dismissed a plaintiff's claim where the

---

[38] Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10 (5th Cir.1992).
[39] Id.
[40] Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981).
[41] JCD Marketing Co. v. Bass Hotels & Resorts, Inc., 812 So. 2d 834, 841 (La. Ct. App. 2002).
[42] Junior Money Bags, 970 F.2d at 10 (quoting McCoin v. McGehee, 498 So. 2d 272, 274 (La. App. 1st Cir. 1986)).
[43] Allstate Ins. Co. v. Cmty. Health Ctr., Inc., No. CIV.A. 08-810, 2014 WL 1689701, at *30-31 (M.D. La. 2014); Bogues v. La. Energy Consultants, Inc., 71 So. 3d 1128, 1135 (La. Ct. App. 2011).
[44] Allstate, 2014 WL 1689701, at *30-31.
[45] Bogues, 71 So. 3d at 1135; Henderson v. Bailey Bark Materials, 116 So. 3d 30, 37 (La. App. 2d

complaint failed "to set forth specific facts to show that [the defendant] improperly influenced any identifiable consumer … or other third parties to prevent them from doing business with [the plaintiff]."[46]

Combined, the first amended complaints allege four specific incidents of successful steering by a Defendant.  There are no allegations that Defendants Paloverde Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Louisiana Farm Bureau Casualty Insurance Company, Safeco Insurance Company of America, Safeway Insurance Company of Louisiana, Liberty Mutual Fire Insurance Company, Liberty Mutual Insurance Company, Government Employees Insurance Company, Shelter Mutual Insurance Company, Shelter General Insurance Company, Direct General Insurance Company of Louisiana, Nationwide Mutual Insurance Company, Sentry Insurance A Mutual Company, Sentry Select Insurance Company, Hanover Insurance Company, Hanover American Insurance Company, Hartford Accident & Indemnity Insurance Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, Encompass Indemnity Company, Encompass Insurance Company of America, Encompass Property & Casualty Company, Travelers Casualty & Surety Company, Travelers Casualty & Surety Company of America, Travelers Casualty Insurance Company of America, Travelers Indemnity Company of America, Travelers Indemnity Company of Connecticut, Travelers Indemnity Company, Travelers Property Casualty Company of America, Farmers Insurance Exchange, United Fire & Casualty Company, United Fire & Indemnity Company, 21st

---

Cir. 2013); Allstate, 2014 WL 1689701, at *30-31.
[46] Brand Coupon Network, LLC v. Catalina Marketing Corp., No. CIV.A. 11-00556-BAJ, 2014 WL 6674034, at *10 (M.D. La. 2014).

Century North American Insurance Company, 21st Century Centennial Insurance Company, America First Insurance Company, American National General Insurance Company, American National Property & Casualty Company, eSurance Insurance Company, Firemans Fund Insurance Company, Imperial Fire & Casualty Insurance Company, GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company, U.S. Agencies Casualty Insurance Company, Safeco Insurance Company of Oregon, USAA Casualty Insurance Company, USAA General Indemnity Company, GoAuto Insurance Company, or AIG Property Casualty Company (collectively the "Companies") successfully steered any customer away from any Plaintiff.  Since Louisiana law requires a plaintiff to show that a defendant prevented the plaintiff from doing business with an identifiable third party, the first amended complaints fail to state a tortious interference claim against the Companies.

Despite the lack of facts to support their generalized allegations, Plaintiffs argue that their tortious interference claims should not be dismissed because the necessary information is within Defendants' possession and control.  Plaintiffs' argument relies on the decision in Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989), which says courts "must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud."[47] Plaintiffs' argument might be persuasive if they had alleged even one instance where each Plaintiff lost a customer due to steering by a Defendant.  But only two of the 39 Plaintiffs in the Parker Case have identified a customer they lost based on the actions of a Defendant, and in the Southern Case, Plaintiff has only identified one customer it lost on account of

---

[47] Craftmatic Sec. Litig., 890 F.2d at 645.

steering.

Despite the paucity of facts in their first amended complaints, Plaintiffs contend that they have: (1) alleged numerous details showing how Defendants interfere with their customers; (2) provided specific examples of that interference; (3) provided specific examples of the effect of that interference; (4) alleged that Defendants act with unity of purpose and to "gang up" on disfavored Plaintiffs; and (5) alleged facts showing that Defendants acted intentionally, willfully and maliciously with intent to harm Plaintiffs' business reputation and viability.[48]  Plaintiffs assert that this is sufficient to plausibly allege that steering is an insurance industry-wide practice.  They argue that the true number of successful steering attempts lies solely within the control and possession of the Defendants, and that the examples of steering, successful and unsuccessful, which they have alleged, sufficiently establish that Defendants tortuously interfere with their businesses.  So Plaintiffs conclude, they are entitled to proceed with discovery to determine exactly how much business they have lost as a result of Defendants' actions.

Plaintiffs have done a much better job of alleging attempts at steering than they have in alleging successful steering by Defendants.  Because Louisiana law requires that the defendant succeed before the conduct is actionable, incidents of unsuccessful steering fail to state a claim.  Moreover, if an attempt at steering is unsuccessful, then the Plaintiff does not lose the business, and has no damages.  What Plaintiffs' averments and arguments actually suggest is that they are largely unaware of facts to support their claims of tortious interference, and they are on the proverbial fishing expedition in hopes of discovering proof to support their claims.  The Court should not approve this procedure,

---

[48] Parker Case, Docket Entry 133 at 13 (citing Docket Entry 119, ¶¶ 348-420).

and I respectfully recommend dismissal of the tortious interference claims against all of the Companies.

In the Parker Case Plaintiffs allege that:

> 353.  In the spring, 2014, consumer Kimberly Bryant notified State Farm she was taking her vehicle to Plaintiff Auto Body Specialist for repairs.  State Farm pressured Ms. Bryant to take her vehicle elsewhere to the point Ms. Bryant felt she was required to take her vehicle to a State Farm preferred shop, which she did.  Due to State Farm, Auto Body Specialist lost Ms. Bryant's business.[49]

The word "pressured," is a conclusion, unsupported by facts.[50]  Once it is eliminated from consideration, this paragraph does not state a cause of action against State Farm.  This paragraph is also problematic because it fails to identify which State Farm entity Plaintiffs are referring to.[51]  These deficiencies may be curable by further amendment.

Plaintiffs in the Parker Case allege that Progressive successfully steered Lauren Jones away from Plaintiff Bradshaw's business by falsely telling Jones she was required to have her vehicle repaired at a particular shop.[52]  These averments sufficiently allege that Progressive prevented Plaintiff Bradshaw from doing business with an identified customer.

Lastly, Plaintiffs in the Parker Case allege that Defendant Farm Bureau told a Ms. Taylor she would need to get an estimate from two of its listed shops.  The statement was

---

[49] Parker Case, Docket Entry 119, ¶ 353.

[50] "As a general rule, conclusory allegations are what plaintiff thinks about a particular thing or act (so-and-so was manipulative, dishonest, fraudulent, conspiratorial or malicious) and factual allegations are what was or may have been observed about the thing or act (so-and-so destroyed the documents, made an arrest, pressed charges or said 'X,' knowing that 'Y' was the truth.)" <u>Kunferman v. Bd. of Regents of Univ. of Wis. Sys.</u>, No. 09-cv-66-bbc, 2010 U.S. Dist. LEXIS 59505, 8-9 (W.D. Wis. June 16, 2010).

[51] It could be State Farm Mutual Automobile Insurance Company, State Farm Fire & Casualty Company, or State Farm General Insurance Company.

[52] Parker Case, Docket Entry 119, ¶¶ 345, 367.

allegedly made in a way that caused Taylor to believe the two shops were her only choices, and as a result, she did not take her vehicle to Plaintiff Auto Body Specialist.[53] While this is sufficient to allege successful interference, Plaintiffs fail to allege that Taylor actually had her vehicle repaired.  Consequently, Plaintiffs have not alleged damage resulting from Defendant Farm Bureau's conduct.  This omission may be curable by further amendment.

In the Southern Case the sole Plaintiff alleges that it lost customer Steve Cambre after a State Farm representative told Cambre "he had to go to a repair shop on State Farm's 'preferred provider plan.'"[54]  Plaintiff has not alleged which of the three State Farm entities named as a Defendant made this statement.[55]  But, it appears that with amendment, Plaintiff could allege that a specific Defendant succeeded in preventing Plaintiff from doing business with an identified customer.

Defendants argue that even if some Plaintiffs have alleged specific instances of successful steering, none has stated a cause of action because they have not satisfactorily pled malice.  Defendants also argue that any allegations of malice are contradicted by averments that Defendants' actions are motivated by the pursuit of profits as opposed to malice, spite, ill will, or bad feelings.  Defendants point to averments by Plaintiffs that Defendants suppress repair costs for profit, and that the DRP agreements are "vehicles for suppressing repair costs."[56]  The first amended complaints also allege that Defendants compel the use of a part procurement program for financial benefit, insist on "aftermarket or salvage parts as a means of reducing claims payments," and "control

---

[53] Id. at ¶ 369.
[54] Southern Case, Docket Entry 36, ¶ 312.
[55] Id. at ¶¶ 57-59.
[56] Parker Case, Docket Entry 119, ¶¶ 109-10, 146, 166; Southern Case, Docket Entry 36, ¶¶ 118, 154-55, 175, 384.

and depress automobile damage repair costs to the detriment of Plaintiffs and the substantial profit of the Defendants."[57]  Defendants argue that these averments are inconsistent with Plaintiffs' generalized allegations of malice, and Plaintiffs' characterization of themselves as "non-compliant" and "shops who refused to comply with Defendants' fixed pricing structures [and] parts procurement rules designed to minimize cost."[58]

Some Defendants also argue that because they have contractual relationships with their insureds, any alleged interference is privileged.[59]  Plaintiffs counter that Louisiana law does not recognize a privilege to interfere in these circumstances. [60]  The parties have not cited and I have not located a Louisiana case discussing this privilege issue.  Therefore, and because the parties only briefly addressed the issue, I believe a decision on the privilege defense would be premature.

The amended complaints contain five sets of allegations intended to show malice. First, Plaintiffs say Defendants always pay the same amount, regardless of who makes the repairs.  Plaintiffs allege that this makes steering financially pointless leaving an intent to punish Plaintiffs as the sole reason Defendants steer customers.[61]  Second, Plaintiffs allege that unidentified Defendants misrepresent to unidentified consumers that the repairs will take longer at unidentified Plaintiffs' shops, than if the consumers take their vehicles to Defendants' preferred shops.[62]  Third, Plaintiffs allege that Defendants tell consumers the Plaintiffs' work cannot be guaranteed, but if the consumer uses one of the

---

[57] Parker Case, Docket Entry 119, ¶¶ 109, 146; Southern Case, Docket Entry 36, ¶¶ 118, 155.
[58] Parker Case, Docket Entry 119, ¶ 417; Southern Case, Docket Entry 36, ¶ 341.
[59] Parker Case, Docket Entry 121 at 19; Southern Case, Docket Entry 41 at 16.
[60] Parker Case, Docket Entry 134 at 50.
[61] Parker Case, Docket Entry 119, ¶ 379; Southern Case, Docket Entry 36, ¶ 315.
[62] Parker Case, Docket Entry 119, ¶¶ 380-384; Southern Case, Docket Entry 36, ¶¶ 316-319.

Defendants' preferred shops, then the insurer will guarantee the work.  These statements are allegedly misleading and inaccurate because Defendants don't make repairs or guarantee any work.  Instead, they require their preferred shops to guarantee the work they perform.  Plaintiffs claim that the preferred shops regularly do poor or incomplete work, and then don't fulfill their guarantees.[63]   Fourth, Plaintiffs complain that Defendants mislead customers into believing Plaintiffs don't guarantee their own work.[64]  Fifth, Plaintiffs allege that in a different case pending in the Middle District of Tennessee, a long-term employee of Progressive Hawaii (not a party in these actions), testified that his employer makes derogatory remarks about the quality of work performed by body shops it has targeted for punishment.  The employee has also testified that his employer refused to pay legitimate repair costs for work performed by shops that are not in its preferred network, and told consumers they would have to pay more if they did not use a preferred shop.[65]  In the Parker Case, Plaintiffs also allege that a State Farm employee has admitted that his employer's goal is to drive the independent body shops out of business.[66]  I find these allegations, combined with the specific allegations concerning Jones, Taylor, and Cambre, and possibly Bryant, sufficient to allege malice if the averments that Defendants actions are dictated by their desire for profits are eliminated.

For the foregoing reasons, I respectfully recommend dismissal without prejudice, with further leave to amend, of Plaintiff Auto Body Specialist's claim against State Farm related to Kimberly Bryant; Plaintiff Bradshaw's claim against Progressive related to Lauren Jones; Plaintiff Auto Body Specialist's claim against Defendant Farm Bureau

---

[63] Parker Case, Docket Entry 119, ¶¶ 385-389; Southern Case, Docket Entry 36, ¶¶ 320-324.
[64] Parker Case, Docket Entry 119, ¶ 390; Southern Case, Docket Entry 36, ¶ 325.
[65] Parker Case, Docket Entry 119, ¶¶ 391-393; Southern Case, Docket Entry 36, ¶¶ 326-328.
[66] Parker Case, Docket Entry 119, ¶¶ 394-395.

related to Ms. Taylor; and Plaintiff Southern Collision's claim against State Farm related to Steve Cambre.  With these exceptions, Plaintiffs' inability to provide more specific facts to support their tortious interference claims has been an ongoing problem in this and the related cases.  Given Plaintiffs' failure to discover and allege more facts than they have to this point, I respectfully recommend dismissal of all remaining tortious interference claims with prejudice.

Count IV: Unjust Enrichment

Louisiana law recognizes a cause of action for unjust enrichment provided the following five requirements are met "(1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff."[67]

In light of the fifth requirement, unjust enrichment is classified as "subsidiary in nature."[68]  This means a cause of action for unjust enrichment "'shall not be available if the law provides another remedy.'"[69]  "[I]t is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied.  '[U]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided.'"[70]  "An action for unjust enrichment is

---

[67] Baker v. Maclay Props. Co., 648 So. 2d 888, 897 (La. 1995).  See also Richard v. Wal-Mart Stores, Inc., 559 F.3d 341, 346 (5th Cir. 2009) (citing Minyard v. Curtis Prods., Inc., 205 So. 2d 422, 432 (La. 1968); Safeco Ins. Co. v. Farm Bureau Ins. Cos., 490 So. 2d 565, 569 (La. Ct. App. 1986)).
[68] Walters v. MedSouth Record Mgmt., LLC, 38 So. 3d 241, 242 (La. 2010).
[69] Id. (quoting La. Civ. Code art. 2298).
[70] Garber v. Badon & Ranier, 981 So. 2d 92, 100 (La. Ct. App. 2008) (quoting Louisiana Nat'l. Bank of Baton Rouge v. Belello, 577 So. 2d 1099, 1102 (La. Ct. App. 1991)).

allowed only when the plaintiff has no other remedy at law.... [W]here there is a rule of law directed to the issue, an action must not be allowed to defeat the purpose of said rule."[71]

The first issue is whether the vehicle repairs Plaintiffs make enrich the Defendants. Plaintiffs' services are provided to the owners of damaged vehicles, not the Defendants. What Defendants reap from these transactions is an obligation to pay for the repairs.  An obligation to pay money is not a benefit.  The Court has previously found that a body shop confers a benefit on the policyholders and claimants whose vehicles are repaired, but not the insurer.[72]

Plaintiffs argue that Louisiana has applied the Restatement of Restitution § 1 to define "benefit" for purposes of unjust enrichment.[73]  The Restatement provides:

> A person confers a benefit upon another if he gives to the other possession or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss.  The word 'benefit,' therefore, denotes any form of advantage....[74]

Plaintiffs argue that using this definition, they benefit Defendants in two ways.  First, they note that Defendants have a duty to pay for the repair of their insureds and claimants vehicles.  According to Plaintiffs, when they make repairs they are performing services which permit Defendants to execute this duty.  Second, when Defendants pay

---

[71] Coastal Envtl. Specialists, Inc. v. Chem-Lig Int'l, Inc., 818 So. 2d 12, 19 (La. Ct. App. 2001).

[72] See A&E Auto Body, Inc., 2015 WL 304048, at *5 ("The repairs at issue obviously provided a benefit to the owners of the vehicles.  But so far as the Amended Complaint discloses, the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it."). See also Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co., No. 6:03-CV-1121-ORL-19KRS, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) ("[A] third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit.").

[73] Harp v. Lake Providence, 338 So. 2d 169, 171 (La. Ct. App. 1976).

[74] Id. (quoting Restatement (First) of Restitution § 1, cmt. b).

less than the repairs are worth, Defendants are economically advantaged by keeping for their own use money that was set aside to pay claims.  I am not persuaded by Plaintiffs' arguments.  The Court's reasoning in <u>A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.</u>, No. 6:14-cv-310-Orl-31TBS, 2015 WL 304048, at *5 (M.D. Fla. Jan. 21, 2015), is still sound:

> The efforts to state a claim in Counts I and II fail because the Plaintiffs have not conferred a benefit upon the Defendants. The Plaintiffs point to the repairs they performed, asserting that they "benefitted Defendants and Defendant's insured/claimants for whom Defendants are required to provide payment for repairs."  (Amended Complaint at 43). However, the Amended Complaint provides no support for this assertion.  The repairs at issue obviously provided a benefit to the owners of the vehicles.  But so far as the Amended Complaint discloses, the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it.  *Cf.* <u>Adventist Health System/Sunbelt, Inc. v. Medical Sav. Ins. Co.</u>, 2004 WL 6225293 at *6 (M.D. Fla. Mar. 8, 2004) (Fawsett, J.) (in unjust enrichment case, stating that "a third party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement," and citing cases).

The first amended complaints do not allege that Plaintiffs have performed services beneficial to Defendants or satisfied a debt or duty of Defendants.  They also do not allege that repairs are done at Defendants' request, that Defendants have a duty to repair the vehicles, or that repairing the vehicles discharges Defendants' obligations to their insureds and claimants.  Therefore, the first amended complaints do not allege that Plaintiffs have enriched Defendants and I respectfully recommend that the unjust enrichment claims be dismissed.[75]

---

[75] <u>See</u>, e.g., <u>Treen Const. Co., Inc. v. Schott</u>, 866 So. 2d 950, 956 (La. Ct. App. 2004).

The next issue is whether the first amended complaints adequately allege an impoverishment.  "[I]mpoverishment can be shown 'only when the factual circumstances show that the impoverishment was not a result of the plaintiffs' own fault or negligence *or was not undertaken at [their] own risk.*'"[76]

The first amended complaints allege that "Plaintiffs have been substantially impoverished by Defendants' actions through loss of both revenue and the opportunity to build custom and trade with consumers who were maliciously steered away from utilizing

---

[76] Dorsey v. N. Life Ins. Co., CIV.A. No. 04-0342, 2005 WL 2036738, at *23 (E.D. La. Aug. 15, 2005) (emphasis in original) (quoting Gray v. McCormick, 663 So. 2d 480, 487 (La. Ct. App. 1995)).  See also Quilio & Assocs., Inc. v. Plaquemines Par. Gov't, 931 So. 2d 1129, 1137 (La. Ct. App. 2006) ("Unjust enrichment cannot be due to the fault or negligence of the plaintiff."); Gray, 663 So. 2d at 486 ("impoverishment" is "an economic detriment suffered by the plaintiff's estate, whether because of the loss of a previously acquired asset or because of the prevention of justified expectation of gain"); Tandy v. Pecan Shoppe of Minden, Inc., 785 So. 2d 111, 117-18 (La. Ct. App. 2001) ("In this case, we conclude that [the defendant] was not unjustly enriched because [the plaintiff] voluntarily acted in such a way that both caused his alleged impoverishment and whatever enrichment [the defendant] might have received.").

Plaintiffs argue that U.S. Disaster v. St. Tammany Parish Gov't & Tammany Parish, No. 2006-10170, 2011 La. Dist. LEXIS 16 (La. Dist. Ct. Dec. 5, 2011), is controlling and that it has "supplanted" prior decisions (Doc. 134 at 52-54).  The trial court in St. Tammany Parish cited City of New Orleans v. BellSouth Telecomms., Inc., CIV.A. No. 09-151, 2011 WL 2293134, at *1 (E.D. La. June 6, 2011) rev'd and vacated, 690 F.3d 312 (5th Cir. 2012), as persuasive authority for the rule that impoverishment due to the plaintiff's own actions taken at his own risk is not an exception to unjust enrichment.  St. Tammany Parish, 2011 La. Dist. LEXIS at *7.  Plaintiffs have not explained how the trial court's decision in St. Tammany Parish "supplanted" the appellate decisions cited *supra*, or the following:

> The *actio de in rem verso,* explained by the Louisiana Supreme Court in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967) and derived from the similar French action, is influenced greatly by French Civil Code articles from which our own are copied.  Minyard, 205 So.2d 432.  The impoverishment element in French law is met only when the factual circumstances show that it was not a result of the plaintiff's own fault or negligence or was not undertaken at his own risk.  Comment, *Actio De In Rem Verso in Louisiana;* Minyard v. Curtis Products, Inc., 43 Tul.L.Rev. 263, 286 (1969); Brignac v. Boisdore, 288 So.2d 31, 35 n. 2 (La. 1973).  Obviously the intent is to avoid awarding one who has helped another through his own negligence or fault or through action taken at his own risk.  Plaintiff was acting possibly out of his own negligence, but more probably knowingly and at his own risk.  Under these circumstances, plaintiff has not proven the type of impoverishment necessary for a claim of unjust enrichment.

Charrier v. Bell, 496 So. 2d 601, 606-07 (La. Ct. App. 1986) writ denied, 498 So. 2d 753 (La. 1986).

their services."[77]  Plaintiffs have already attempted to recover these losses by alleging antitrust and tortious interference claims against Defendants.  These unsuccessfully pled claims operate to bar unjust enrichment as an alternative cause of action.[78]

Plaintiffs' unjust enrichment claims also fail because they have not plausibly alleged that they had any reasonable expectation of additional payment from Defendants. Plaintiffs aver that over a course of years they have made repairs for Defendants' insureds and claimants.  Plaintiffs allege that "Defendant insurers compel acceptance of a fixed pricing structure,"[79] "Defendants ... simply refuse to pay more for parts than the cheapest a part can be purchased."[80]  "Payment is presented to Plaintiffs on a 'take it or leave it' basis."[81]  "All Defendants assert they will pay no more than the market rate for labor in the market area."[82]  And, "Defendants refuse to pay the posted rates."[83]  Plaintiffs do not allege that Defendants have failed to pay for the repairs.  What Plaintiffs are complaining about is that Defendants do not make "full payment" because Plaintiffs' services are worth more than the prices Defendants are willing to pay.[84]  Plaintiffs' claim are not plausible.  They have dealt with Defendants for years and know what Defendants will pay.  Given the parties' history, Plaintiffs could not, under any level of reasonableness, have expected to be paid more than what they received, and any alleged impoverishment resulting from accepting work from Defendants' insureds was

---

[77] Parker Case, Docket Entry 119, ¶ 559; Southern Case, Docket Entry 36, ¶ 476.
[78] See Walters v. MedSouth Record Mgmt., LLC, 38 So. 3d 241, 242 (La. 2010) ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment."); JP Mack Indus. LLC v. Mosaic Fertilizer, LLC, 970 F. Supp. 2d 516, 521 (E.D. La. 2013) ("In Louisiana, by law, an unjust enrichment claim is a 'subsidiary' claim, not an alternative claim").
[79] Parker Case, Docket Entry 119, ¶ 179; Southern Case, Docket Entry 36, ¶ 185.
[80] Id. at ¶ 186; Id. at ¶ 191.
[81] Id. at ¶¶ 192; Id. at ¶ 196.
[82] Id. at ¶ 236; Id. at ¶ 206.
[83] Id. at ¶ 272; Id. at ¶ 239.
[84] Id. at ¶¶ 192, 276, 292, 559-61; Id. at ¶ 196, 242, 255, 476-48.

undertaken at Plaintiffs' own risk.  If Plaintiffs are unhappy with the prices Defendants

pay, then they can negotiate higher prices before performing the repairs or refuse to make

repairs for Defendants' insureds.[85]  Unjust enrichment is not available to secure a better

bargain for Plaintiffs than the amounts they agreed to when they accepted the work.

Given the amount of time Plaintiffs have had to correct these deficiencies, and

because I see no realistic possibility that they can overcome these impediments, I

respectfully recommend that the unjust enrichment claims be dismissed with prejudice.

## IV. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that:

(1) The tortious interference claims by Plaintiff Auto Body Specialist's claim against

State Farm related to Kimberly Bryant; Plaintiff Bradshaw's claim against Progressive

related to Lauren Jones; Plaintiff Auto Body Specialist's claim against Defendant Farm

Bureau related to Ms. Taylor; and Plaintiff Southern Collision's claim against State Farm

related to Steve Cambre be dismissed without prejudice, with leave to amend.

(2) The Court decline to exercise supplemental jurisdiction over the foregoing

claims.

(3) All remaining tortious interference claims be dismissed with prejudice.

(4) All unjust enrichment claims be dismissed with prejudice.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions.  A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual

---

[85] See Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. d ("Because contract is strongly preferred over restitution as a basis for private obligations, restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand.").

finding or legal conclusion the district judge adopts from the Report and

Recommendation.  <u>See</u> 11th Cir. R. 3-1.

      **RESPECTFULLY RECOMMENDED** at Orlando, Florida on April 5, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

      Presiding United States District Judge
      Counsel of Record